IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KRISTIN CARLSON,<br><br>             Plaintiff,<br><br>     v.<br><br>THE PNC FINANCIAL SERVICES GROUP,<br>INC., et al.,<br><br>             Defendants. | CIVIL ACTION<br>NO. 25-5702 |

## **OPINION**

**Slomsky, J.**                                                                   **May 4, 2026**

### **TABLE OF CONTENTS**

I.   **INTRODUCTION**..................................................................................................... 1

II.  **BACKGROUND** ..................................................................................................... 2

   A.   Factual Background .......................................................................................... 2

      1.   Parties............................................................................................................ 2

      2.   The April 2025 Tax Withdrawals and Plaintiff's Oversight Requests ........... 3

      3.   Plaintiff's Demand Letter and Defendant PNC's Response ......................... 7

      4.   Present Lawsuit............................................................................................ 8

   B.   Procedural Background.................................................................................... 10

III. **STANDARD OF REVIEW**.................................................................................... 10

IV.  **DISCUSSION** ....................................................................................................... 11

   A.   Venue is Not Proper in the Eastern District of Pennsylvania............................ 11

   B.   The Case Will Be Transferred to the Southern District of Ohio ..................... 17

i

i.   Private Interest Factors ................................................................................. 18

ii.  Public Interest Factors................................................................................... 20

**V.   CONCLUSION** ................................................................................................ 21

## I.    INTRODUCTION

This case arises out of Plaintiff Kristin Carlson's claims that Defendants PNC Bank, N.A., ("PNC"), a corporate co-trustee, and Defendants Timothy Carlson, Murray Wilson, and William Rathman, Jr., as individual co-trustees (collectively, the "Individual Co-Trustee Defendants") (together with PNC, the "Trustee Defendants"), along with three Defendant PNC officers, breached their fiduciary obligations to her in their administration of the trust of which she is a beneficiary.  (See Doc. No. 32.)  The alleged breach stems from the sale and tax treatment of real property located in Ohio that belonged to the trust.  (Id. ¶¶ 1, 17, 34.)  After Plaintiff's concerns were not addressed to her satisfaction, she claims that the Trustee Defendants used outside counsel, Defendant Vorys, Sater, Seymour and Pease LLP ("Vorys"), to assist in the breach of their fiduciary duties owed to her.  (See id. ¶¶178–98.)

In response to Plaintiff's Amended Complaint, the Trustee Defendants and Defendant Vorys filed Motions to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) based on improper venue and 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Doc. Nos. 42, 46.)  In addition, the Individual Co-Trustee Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  (See Doc. No. 42.)

For reasons that follow, venue is improper in this District.  Rather than dismiss the action in its entirety, though, the Court will transfer this case to the Southern District of Ohio where it could have been filed in the first instance.

## II.     BACKGROUND

### A.  Factual Background

As required at the motion to dismiss stage, the facts are taken from the Amended Complaint and presented in the light most favorable to the Plaintiff.  See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

### 1.  Parties

Plaintiff is one of several beneficiaries of the Ernest D. Rathman & Marguerite Sebald Rathman Trust, which was established on March 4, 1963 (the "Trust").[1]  (Doc. No. 32 ¶4.)  The Trust is administered by PNC Bank, N.A. ("PNC") as corporate co-trustee and Timothy Carlson, Murray Wilson, and William Rathman, Jr. as individual co-trustees.  (Id. ¶¶ 5, 7.)  Three PNC officers—Marie Tormey (Chief Fiduciary Officer), Laura Long (General Counsel), and William Demchak (Chief Executive Officer) (together with PNC, the "PNC Defendants")—who allegedly had authority over fiduciary-services policies, reporting, and responses to beneficiary oversight, are also named Defendants in this case.  (Id. ¶ 8.)

Although Plaintiff does not assert a specific claim against PNC Financial Services Group, Inc. ("PNC Financial"), PNC Financial is still a named Defendant because PNC Financial is Defendant PNC's parent company.  (Id. ¶ 6.)  Plaintiff alleges that PNC Financial is vicariously liable for the acts and omissions of Defendant PNC's personnel who performed fiduciary services, and for conduct directed or ratified by PNC Financial's own officers.  (Id.)

---

[1]  Because the Trust Agreement is referenced in and relied on in the Amended Complaint, the Court may consider it when ruling on the Motions to Dismiss.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("A document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotations and citations omitted).

Plaintiff also brought claims against two outside professionals: Ernst & Young LLP ("EY") [2], the tax advisor during the pertinent tax period, and Vorys, Sater, Seymour and Pease LLP ("Vorys"), Defendant PNC's outside litigation counsel.  (Id. ¶¶ 9, 46.)

### 2.  The April 2025 Tax Withdrawals and Plaintiff's Oversight Requests

In April 2024, the Trust sold a piece of real estate that it owned, which was located on the 4200 Block of Grand Avenue in Butler County, Ohio.  (See Doc. No. 33, Ex. 2.)  The net proceeds from the sale were $908,052.35.  (Id.)  Plaintiff alleges that PNC's 2024 quarterly and year-end statements incorrectly classified the April 2024 sale proceeds as "Rent/Investment Income" and that no corrected beneficiary statement was issued.  (Doc. No. 32 at ¶ 36, Ex. 2A.) The April 2024 sale was recorded as follows:

PNC PRIVATE BANK

E D & M S RATHMAN FUND B
IRREVOCABLE TRUST STATEMENT
Account number 70-70-001-***5477
January 1, 2024 - December 31, 2024          Page  41 of  114

*Detail*

**Investment income**

| Activity | Description | Payable date | Post date | Quantity | Amount per unit | Income | Principal |
|---|---|---|---|---|---|---|---|
| Dividend | | 09/30/24 | | 2,000 | 0.4750 | 950.00 | |
| Dividend | | 12/30/24 | | 2,000 | 0.4750 | 950.00 | |
| | | | | | | $3,800.00 | |
| Interest | WYFTH BDS 06.450% DUE 02/01/2024 | 02/01/24 | | 100,000 | 0.0323 | 3,225.00 | |
| Interest | PNC BANK N.A. DEPOSIT SWEEP ACCRUED INT WM FIDUCIARY TRUST | 12/31/23 | 01/02/24 | 679,187.100 | | 2,970.74 | |
| Interest | | 12/31/23 | 01/02/24 | 244,293.320 | | 662.51 | |
| Interest | | 01/31/24 | 02/05/24 | 36,253.680 | | 540.89 | |
| Interest | | 01/31/24 | 02/05/24 | 89,358.640 | | 771.44 | |
| Interest | | 02/29/24 | 03/04/24 | 26,790.170 | | 65.28 | |
| Interest | | 02/29/24 | 03/04/24 | 1,586.840 | | 84.11 | |
| Interest | | 03/31/24 | 04/01/24 | 67,677.610 | | 232.52 | |
| Interest | | 03/31/24 | 04/01/24 | 8,451.690 | | 54.93 | |
| Interest | | 04/30/24 | 05/01/24 | 98,953.790 | | 413.91 | |
| Interest | | 04/30/24 | 05/01/24 | 389,404.700 | | 1,366.99 | |
| Interest | | 05/31/24 | 06/03/24 | 173,217.480 | | 724.29 | |
| Interest | | 05/31/24 | 06/03/24 | 33,967.320 | | 1,695.03 | |
| Interest | | 06/30/24 | 07/01/24 | 222,971.550 | | 896.70 | |
| Interest | | 06/30/24 | 07/01/24 | 61,477.920 | | 193.77 | |
| Interest | | 07/31/24 | 08/01/24 | 275,123.770 | | 1,168.71 | |
| Interest | | 07/31/24 | 08/01/24 | 61,477.920 | | 273.38 | |
| Interest | | 08/31/24 | 09/03/24 | 329,130.820 | | 1,397.73 | |
| Interest | | 08/31/24 | 09/03/24 | 61,477.920 | | 273.38 | |
| Interest | | 09/30/24 | 10/01/24 | 371,129.820 | | 1,481.79 | |
| Interest | | 09/30/24 | 10/01/24 | 7,319.640 | | 184.61 | |
| Interest | | 10/31/24 | 11/01/24 | 425,837.630 | | 1,662.80 | |
| Interest | | 10/31/24 | 11/01/24 | 98,698.870 | | 136.18 | |
| Interest | | 11/30/24 | 12/03/24 | 479,192.820 | | 1,749.81 | |
| Interest | | 11/30/24 | 12/03/24 | 98,698.870 | | 372.14 | |
| | | | | | | $19,373.64 | |
| Rent | 4214 4220 GRAND AVENUE BUTLER COUNTY MIDDLETOWN OH 45044 SALE OF REAL ESTATE CONTRACT SALES PRICE | 04/15/24 | | | | | 908,052.35 |

---

[2]  On January 8, 2026, Plaintiff filed a Notice of Voluntary Dismissal of Defendant EY in order to preserve complete diversity and ensure that this Court retain subject-matter jurisdiction. (Doc. No. 49.)

(Doc. No. 33, Ex. 2.)

Plaintiff's Amended Complaint also raises concerns surrounding three disbursements made from the Trust account.  Specifically, on April 4, 2025, Defendants reported $427,000 as "PAID EFTPS" ($370,000 Federal; $45,000 Ohio; $12,000 Kentucky).  (Doc. Nos. 32 ¶ 38; 33, Ex. 3.)  Regarding these payments, Plaintiff contacted PNC via email on May 7, 2025 to "report multiple suspicious disbursements" from the Trust account.  (See Doc. No. 33, Ex. 4.)  In her email, Plaintiff noted that these payments were labeled "Federal Extension Form 7004 Paid EFTPS," "OH Fiduciary Extension Paid EFTPS," and "KY Fiduciary Extension Paid EFTPS," respectively, and were "sent to a masked account ending in -4718," which Plaintiff stated she did not recognize or authorize.  (Id.)

On May 14, 2025, PNC's Chief Fiduciary Officer, Defendant Marie Tormey, responded in writing to Plaintiff's email and explained that the April 4, 2025 payments were estimated fiduciary income tax payments made to the IRS, Ohio Department of Taxation, and Kentucky State Treasurer, respectively.  (Id., Ex. 5A.)  Defendant Tormey further explained that the account ending in -4718 is an internal holding account used by PNC to facilitate the required tax payments to the IRS via the Electronic Federal Tax Payment System.  (See id.)  Defendant Tormey noted that PNC "filed Form 7004 with the IRS to apply for an extension of time in which to file the Trust's 2024 fiduciary income tax return (Form 1041)" because of its inability to confirm the cost-basis prior to the filing deadline.  (Id.)  A copy of the Form 7004 was attached to her email.  (See id.)

Plaintiff, believing that her concerns remained unresolved, responded that same day to Defendant Tormey.  In her emailed response, Plaintiff requested:

1.  Routing trace documentation showing the flow of funds from the trust account to IRS or state tax authorities via the account ending in -4718.

2.  IRS confirmation letter(s) for all EFTPS payments related to the 2024 Form 1041
    filing.

3.  Full identity and authority of the trust-level tax counsel responsible for these
    payments.

4.  Signed authorization chain, including which trustee(s) and/or fiduciary officer(s)
    approved these disbursements and under what authority.

(Doc. No. 33, Ex. 6.)

On May 21, 2025, Defendant Tormey responded and explained that PNC "will file the 2024 Form 1041 with the recently obtained real estate cost basis prior to its extension due date, which may alter the amount of tax due" and that "any refund that may be received will be credited to the Trust's account."  (Doc. No. 33, Ex. 7A.)  In response to Plaintiff's request for confirmation letters, Defendant Tormey explained:

> [E]nclosed with this letter is a copy of the redacted cancelled check evidencing payment of the Ohio estimated tax payment per your request.  As the Federal and Kentucky tax payments were remitted electronically, cancelled checks cannot be provided for those payments.  However, we have received confirmation numbers confirming receipt of both the Federal and Kentucky tax payments by the respective taxing authorities.  We receive similar confirmation numbers for all tax payments submitted via the EFTPS system.  Having received a copy of the referenced cancelled check and confirmation numbers, we are confident all three of these payments have been received by the appropriate taxing authorities.

(Id.)

Plaintiff once again was not satisfied with Defendant Tormey's response.  Later that day, Plaintiff responded in email that "[t]hese specific transactions are not disputed based on tax obligation, but based on the total absence of undocumented authorization, transparency, and oversight – all of which are required under both Ohio law and OCC[3] fiduciary guidance." (Id., Ex. 8.)

---

[3]  "OCC" is short for Office of the Comptroller of the Currency.  Office of the Comptroller of the Currency, https://www.occ.gov/publications-and-resources/publications/comptrollers-

5

On May 29, 2025, Defendant Tormey responded that PNC will not be providing the additional requested documentation because her previous emails are sufficient to meet PNC's fiduciary obligation to beneficiaries and should be sufficient to address Plaintiff's concerns. (Id., Ex. 9.)

Next, Plaintiff alleges that Defendant PNC produced on June 24, 2025 "internal payment spreadsheets and a single cropped page from the Trust's 'Statement of Transactions,'" but "withheld neutral third-party proofs and trace data," for the Grand Avenue property. (Doc. Nos. 32 ¶ 44; 33, Ex. 10A.) The "Statement of Transactions" is provided below:

```
                        S T A T E M E N T   O F   T R A N S A C T I O N S

                              01/01/25 THROUGH 06/23/25

   ACCOUNT                                                                              PAGE   34
   70-70-001-0175477           E D & M S RATHMAN FUND B

   DATE      TRANSACTION                                    INCOME       PRINCIPAL      CARRYING
             DESCRIPTION                                    CASH         CASH           VALUE

   04/02/25  COHEN & STEERS PREFERRED                        959.25
             SECURITIES AND INCOME FUND CL I
             DIVIDEND PAYABLE 03/31/25 AT .0565
             PER SHARE ON 16,977.929 SHARES

   04/04/25  TRANSFER TO 42-42-090-9564718 FOR                           -370,000.00
             2024 FEDERAL EXTENSION FORM 7004 PAID
             EFTPS

   04/04/25  TRANSFER TO 42-42-090-9564718 FOR                           -12,000.00
             2024 KY FIDUCIARY EXTENSION PAID EFTPS

   04/04/25  TRANSFER TO 42-42-090-9564718 FOR                           -45,000.00
             2024 OH FIDUCIARY EXTENSION PAID EFTPS
```

(Ex. 10C.)

On June 28, 2025, Plaintiff requested the closing statement, wire/ACH confirmations, deed/escrow, and internal tie-outs for the April 2024 sale. (Id. ¶ 37; Ex. 13A.) On June 30, 2025, Defendant Vorys, outside counsel for PNC, responded to Plaintiff, describing Plaintiff's request as "somewhat unusual" and did not produce the neutral records. (See id., Ex. 13A) ("As before, PNC will be responsive to a beneficiaries' reasonable requests for information, but these are somewhat unusual requests.")

---

handbook/files/personal-fiduciary-activities/index-personal-fiduciary-activities.html (last visited Apr. 30, 2026).

### 3.  Plaintiff's Demand Letter and Defendant PNC's Response

On July 22, 2025, Plaintiff, through counsel, sent a formal demand letter addressed to Defendant Laura Long, General Counsel of Defendant PNC Financial.  (Doc. No. 33, Ex. 11.) Plaintiff's letter provided a summary of the alleged violations by Defendant PNC, as detailed above, and requested the following documentation:

- Complete, unredacted transaction records for all tax-related disbursements, including verifiable third-party confirmations from the IRS, Kentucky Department of Revenue, Ohio Department of Taxation, or applicable tax authorities.

- Full routing trace documentation showing the origin, path, and final application of trust assets for all transactions linked to internal holding accounts, legal disbursements, or masked EFTPS designations.

- Unredacted, contemporaneous account statements and transactional support materials for all distributions, including those related to legal payments initiated following beneficiary oversight requests.

(Id.)

On August 12, 2025, in response to Plaintiff's letter, Defendant PNC, through counsel (Defendant Vorys), stated that no additional third-party communications existed beyond the confirmation numbers that were previously provided and invited Plaintiff to seek confirmations from taxing authorities directly. (Doc. Nos. 32 ¶ 43; 33, Ex. 12.)  Defendant PNC also addressed the alleged "misclassification" of the Grand Avenue property sale proceeds as "Rent" on the beneficiary statement and the tax treatment of the sale.  Specifically, the selection of "rent" was an immaterial, minor clerical error that had no impact on the treatment of the sale proceeds, which were otherwise repeatedly and correctly described as sale proceeds.  (Doc. No. 33, Ex. 12.)  Defendant PNC provided Plaintiff with a copy of the Settlement Statement from the sale of the Grand Avenue property showing that the sale proceeds of $908,052.35 match the amount placed into the Trust account.  (Id.)

Furthermore, Defendant PNC informed Plaintiff that the 2024 Federal Income Tax Return had been timely filed, which resulted in an overpayment that would be credited toward the 2025 estimated tax payments due from the Trust, with the remainder placed back into the trust.[4] (Id.) Defendant PNC also asserted that the 2024 Fiduciary Extension payment made to Kentucky was appropriate because the Trust has an individual co-trustee who resides there and is reflected on the online statements accessible to Plaintiff. (Id.) Lastly, Defendant PNC represented that the 2024 Kentucky fiduciary return had been timely filed, and any overpayment will be treated the same as any overpayment on the Federal return. (Id.)

### 4. Present Lawsuit

After correspondence between the Parties, as outlined above, Plaintiff brought this lawsuit. Plaintiff's claims boil down to Trust Defendants' alleged failure to produce neutral, third-party confirmations in response to her requests surrounding the sale and tax treatment of the Grand Avenue property. While PNC claims the payments were routed through an internal account ending in -4718 as a standard tax practice, Plaintiff asserts that this routing does not replace neutral, third-party confirmations. (Id. ¶ 39.) In response to requests for neutral confirmations, PNC produced an image of an Ohio paper-check showing issuance only, but no state deposit stamp was on the copy. (Id. ¶ 40.)

Plaintiff also alleges that between May and September of 2025, around the time of Plaintiff's requests, Defendant PNC made multiple payments to Defendant Vorys, the law firm,

---

[4] EY, which provided tax services to PNC, "in an abundance of caution" took this approach because it was "the most conservative approach to eliminate the risk of penalties for underpayment of estimated taxes." (Id., Ex. 12 at 2.) Upon confirmation of the actual cost basis of the Grand Avenue property, the 2024 Federal Income Tax Return for the Trust was prepared and timely filed, listing an adjusted cost basis of $438, 532. (Id.)

from the Trust's account.  (Id. ¶ 47; Ex. 14A–C.)  However, Plaintiff claims that Defendants produced only non-itemized "summary" invoices and charges that relate to prior years, but did not produce itemization links showing the work done during those prior years.  (Id.; Ex.14D–G.) One of the three invoices is provided below:

| | |
|---|---|
| Ernest D. and Marguerite Sebald Rathman Trust<br>Emily A. Coughlin<br>Vice President & Senior Fiduciary Advisor<br>201 East 5th Street<br>Cincinnati, OH 45202 | Invoice Date:      December 19, 2023<br>Invoice Number:             1576965<br>Matter Number:      029200-000928<br>                              Emily S. Pan |

Summary for Professional Services Through **November 30, 2023**

Client:     PNC Bank NA
Matter:     Ernest D. and Marguerite Sebald Rathman Trust

|  | | |
|---|---|---|
| Total Fees | $ | 6,652.50 |
| **Total Amount Due** | $ | 6,652.50 |

(Ex. 14D.)

Given her concerns, Plaintiff brought the following claims against Defendants:  (1) Breach of trust against PNC and Individual Co-Trustees (Count I);  (2) Breach of duty to inform/report against PNC and Individual Co-Trustees (Count II);   (3) Accounting/production of records against PNC and Individual Co-Trustees (Count III);  (4) a Uniform Principal and Income Act (UPIA) violations against PNC and Individual Co-Trustees (Count IV);  (5) Trustee removal against PNC and Individual Co-Trustees (Count V);  (6) Fraud – affirmative misrepresentation against PNC and Individual Co-Trustees (Count VI);  (7) Fraudulent concealment against PNC and Individual Co-Trustees (Count VII);  (8) Direct Negligence against Marie Tormey (Count VIII);  (9) Direct Negligence against Laura Long (Count VIX); (10) Direct Negligence against William Demchak (Count X);  (11) Professional Negligence

9

against EY (Count XI);  (12) Aiding and abetting breach of trust against EY (Count XII);  (13) Aiding and abetting breach of trust against Vorys (Count XIII);  and (14) Unjust enrichment against Vorys (Count XIV).  (See Doc. No. 32.)

### B.  Procedural Background

On October 2, 2025, Plaintiff filed her original Complaint against Defendants.  (Doc. No. 1.)  On November 21, 2025, Plaintiff filed an Amended Complaint.  (Doc. No. 32.)  On January 6, 2026, Defendant Ernst & Young LLP filed its Motion to Dismiss the Amended Complaint.  (Doc. No. 45.)  On January 8, 2026, Plaintiff filed a Notice of Voluntary Dismissal as to Defendant Ernst & Young LLP.  (Doc. No. 49.)  On January 6, 2026, Defendant Vorys, Sater, Seymour and Pease LLP filed their Motion to Dismiss the Amended Complaint.  (Doc. No. 42.)  On January 6, 2026, Trust Defendants filed their Motion to Dismiss the Amended Complaint.  (Doc. No. 46.) On February 5, 2026, Plaintiff filed her Response in Opposition to Defendants' Motions to Dismiss. (Doc. No. 53.)  On February 18, 2026, Defendant Vorys filed their Reply.  (Doc. No. 58.)

On February 24, 2026, the Court held a hearing on the Motions to Dismiss and issued an Order granting the parties leave to file supplemental briefing on the Motions to Dismiss.  (Doc. No. 24.)   On March 16, 2026 Defendant Vorys, Sater, Seymour and Pease LLP filed their Supplemental Brief.  (Doc. No. 63.)  On March 17, 2026, Trust Defendants and Plaintiff filed their Supplemental Briefs.  (Doc. Nos. 64, 65.)

Defendants' Motions to Dismiss the Amended Complaint (Doc. Nos. 42, 46) are now ripe for disposition.

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(3), a court must grant a motion to dismiss if venue is improper.  Fed. R. Civ. P. 12(b)(3).  "Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant."  Great W.

Mining & Mineral Co. v. ADR Options, Inc., 434 F. App'x 83, 86 (3d Cir. 2011) (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982)).  To support their positions, "[t]he parties may submit affidavits . . . and may stipulate as to certain facts."  Lannett Co. v. Asherman, Civ. A. No. 13-2006, 2014 WL 716699, at *3 (E.D. Pa. Feb. 24, 2014) (citing Manning v. Flannery, Civ. A. No. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010)).

When deciding a motion to dismiss for improper venue, the court "accept[s] as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits."  Bockman v. First Am. Mktg. Corp., 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (citing Pierce v. Shorty Smalls of Branson, Inc., 137 F.3d 1190, 1192 (10th Cir. 1998)).  But "even when the court considers affidavits and other evidence outside the pleadings, the court 'must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor.'"  Lannett, 2014 WL 716699, at *3 (quoting Manning, 2010 WL 55295, at *4).

Under 28 U.S.C. § 1391(b), venue is proper in:

**(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

**(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

**(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

## IV.    DISCUSSION

### A.  Venue is Not Proper in the Eastern District of Pennsylvania

Defendants contend that the Eastern District of Pennsylvania is an improper venue for this action.  As noted, venue is only proper in:

11

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Plaintiff asserts that venue is proper here under subsection (2).[5]  (Doc. No. 65 at 7.)  Specifically, Plaintiff claims that a substantial part of the events giving rise to her claims occurred in the Eastern District of Pennsylvania because: (1) Defendant PNC's fiduciary duties at issue were administered from Pennsylvania; and (2) a check was routed through a Philadelphia-based account.  (Doc. No. 65 at 7–9.)

The Third Circuit Court of Appeals has instructed that, in determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction, "[t]he test…is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"  Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).  In addition, the Third Circuit has explained that "[i]n assessing whether events or omissions giving rise to the [plaintiff's] claims are substantial, it is necessary to look at the nature of the dispute."  Bockman, 459 F. App'x at 161 (citing

---

[5]  Subsection (1) does not apply here because not all defendants are residents of the state.  None of the Individual Co-Trustees reside in Pennsylvania.  (See Doc. No. 46-1 at 18; n.5.)  Timothy Carlson resides in Ohio, Murray Wilson resides in Kentucky, and William Rathman, Jr. resides in South Carolina.  (Id.)

Subsection (3) also does not apply here because there is a district in which the action may otherwise be brought—the Southern District of Ohio—which is explained more fully below.

12

Cottman, 36 F.3d at 295).  Moreover, "events or omissions that might have only some tangential connection with the dispute in litigation are not enough." Cottman, 36 F.3d at 294.

Accordingly, when a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, the Court should engage in a two-prong inquiry: (1) identify the nature of the claims and the acts or omissions that the plaintiff alleges to give rise to those claims, and (2) determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed. Bockman, 459 F. App'x at 161 (citations omitted).

Here, with respect to the first prong—namely, the nature of the claims—the causes of action set forth in Plaintiff's Amended Complaint center around a trust that is administered in Ohio.  The Ohio Trust Code provides that a "trust's principal place of administration ordinarily will be the place where the trustee is located." O.R.C. § 5801.07.  But "[d]etermining the principal place of administration becomes more difficult, however, when cotrustees are located in different states or when a single institutional trustee has trust operations in more than one state. In such cases, other factors may become relevant, including the place where the trust records are kept or trust assets are held, or in the case of an institutional trustee, the place where the trust officer responsible for supervising the account is located." Id.

Because in this case the Trust has multiple co-trustees, including an institutional trustee— Defendant PNC—all of whom reside in different states, the Court must consider other factors to determine where the Trust's principal place of administration is located.  While the terms of the Trust do not specifically designate Ohio as the place of administration, the Trust provides:

> EIGHTH: The trusts herein created have been accepted by the Trustees in the State of Ohio and all questions pertaining to said trusts and their validity and the administration thereof and the construction of this agreement shall be determined in accordance with the law of the State of Ohio.

13

(Doc. No. 46-2.)  Importantly, the Trust records and property are in Ohio, the terms of the Trust make clear that Ohio law governs the administration of the Trust, and the trust officer is located in Ohio.  (See Doc. Nos. 46-2, 33, Exs. 14D–G, 63-1 at 8.)  As such, all factors support the finding that Ohio is the Trust's principal place of administration.

Turning to the second prong—whether a substantial part of Defendants' acts occurred in the Eastern District of Pennsylvania—Plaintiff makes two arguments: (1) Defendant PNC's fiduciary duties at issue were administered from Pennsylvania; and (2) a check was routed through a Philadelphia-based account.[6]  (Doc. No. 65 at 7–9.)  The Court will address each argument, in turn, below.

First, Plaintiff claims that Defendant Tormey's emails to Plaintiff constitute a substantial part of the events giving rise to her claims because they demonstrate that Defendant PNC's fiduciary duties were administered from Pennsylvania.  (Doc. Nos. 32 ¶20; 53 at 7; 63-1 at 18:7– 9, 19:11–14.)  But at the hearing on the Motion to Dismiss held on February 24, 2026, Plaintiff's counsel was unable to state with certainty from where in Pennsylvania Defendant Tormey sent

---

[6]  Plaintiff argues in her Supplemental Brief that Defendant PNC cannot claim that venue in the Eastern District of Pennsylvania is improper because PNC, in an unrelated case in which it was the Plaintiff, claimed that venue in this district was proper.  (Doc. No. 65 at 10.)  To support this argument, Plaintiff cites to the complaint in PNC Bank, N.A. v. Crosby, No. 23-CV-02831, where PNC alleged that venue in the Eastern District of Pennsylvania was proper because PNC "maintains an office in Horsham, Pennsylvania, which is the office through which the underlying transactions were negotiated and documented."  (Id.)  Plaintiff's argument is unpersuasive for two reasons.

First, a complaint is not binding legal authority, but simply a party's allegation of facts.  Second, venue is case and fact-specific.  Here, the role of this Court is to analyze the underlying facts of this specific case to determine whether venue is proper under § 1391(b).  See 17 Moore's Federal Practice § 110.04 ("'Substantiality,' for this purpose, is more a qualitative than a quantitative inquiry. Courts measure it by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.").  Here, the overall nature of Plaintiff's claims and the events in question differ from those alleged in Crosby.

emails to his client.  (Doc. No. 63-1 at 19:1–4) ("Well, I'm not sure if [Defendant Tormey's emails were sent] in the Eastern District, but I know it was from Pennsylvania….").  And general assertions that these emails were sent from Pennsylvania are not enough to establish venue specifically in the Eastern District of Pennsylvania.  See, e.g., Bockman, 459 F. App'x at 162 (holding "general contracts" with Pennsylvania insufficient to establish that significant events or omissions material to complaint took place in this district); see also 28 U.S.C. § 1391(b)(2) (referring to "a *judicial district* in which a substantial part of the events or omissions giving rise to the claim occurred") (emphasis added).

Even so, Counsel for the Trust Defendants pointed out that Defendant PNC, Defendant Tormey's employer, is based in Pittsburg, Pennsylvania, which is in the Western District of Pennsylvania.  (Doc. No. 63-1 at 6:16–17.)  What's more, Counsel for Trust Defendants stated, and Plaintiff's counsel conceded, that Defendant Tormey is located in New Jersey.  (See id. at 16:2, 18:18–21.)  Defendant Tormey does not administer the Trust; rather, Plaintiff's email was sent to Defendant Tormey only for review and response.  (Id. at 10; see also Doc. No. 33, Ex. 5A.)

In addition, venue must be proper for each of the thirteen (13) claims alleged in Plaintiff's Amended Complaint.  See Lomanno v. Block, 285 F. Supp. 637, 641 (E.D. Pa. 2003) (quoting Phila. Musical Soc'y, Local 77 v. Am. Red'n of Musicians of the US & Can., 812 F. Supp. 509, 517 (E.D. Pa. 1992) ([V]enue must be proper for each claim in a case with multiple claims.")).  In Counts I through VII of the Amended Complaint, Plaintiff alleges claims of multiple breaches of fiduciary duty against the Individual Co-Trustees.  While Plaintiff is aware that none of the Individual Co-Trustees reside in Pennsylvania, she argues that their involvement is linked by their capacity as co-trustees.  Specifically, Plaintiff contends that because Individual

15

Co-Defendants were copied on the email correspondences between Defendant Marie Tormey, PNC's Chief Fiduciary Officer, and Plaintiff, they "knowingly participate[d] in or ratif[ied]" Defendants Tormey's refusals. (Doc. No. 53 at 8–9.) But, as explained above, Defendant Tormey is not located in the Eastern District of Pennsylvania. (Doc. No. 63-1 at 9:10; 19:18–21.)

In that same vein, Plaintiff brought two claims (Counts VIII and VIX) alleging wrongdoing by Defendant Vorys in its capacity as Defendant PNC's legal counsel. However, any alleged wrongdoing by Defendant Vorys would have taken place in Ohio, where it is located. (See Doc. Nos. 33, Ex. 12.) And neither Plaintiff's Amended Complaint nor briefs allege or tie any action taken by Defendant Vorys to this District. As such, venue is not proper in this District for Plaintiff to litigate her claims against Defendant Vorys.

Second, Plaintiff's argument that the Ohio check demonstrates that Defendant PNC was managing tax payments from Philadelphia is likewise unpersuasive.[7] (See Doc. Nos. 63-1 at

---

[7] In her Supplemental Brief, Plaintiff relies on Abira Med. Labs., LLC v. Karim for the proposition that "the routing of disputed transactions" through Philadelphia is substantially related to the cause of action because it is documentary proof that PNC's payment operations for this Trust run through Philadelphia. No. 20-CV-4317, 2022 U.S. Dist. LEXIS 1684 (E.D. Pa. Jan. 5, 2022). In Abira, Plaintiff, a Pennsylvania-based company, sued Defendant, a Missouri-based individual, for allegedly using Plaintiff's employees to misappropriate confidential information stored on its computers. In Abira, the court held that Eastern District of Pennsylvania was the proper venue for Plaintiff's claims because Defendant, despite being physically being located in Missouri, communicated with Plaintiff's Pennsylvania-based employees through phone call and email to obtain confidential information from Plaintiff's Pennsylvania headquarters and interfered with Plaintiff's employment contracts, which caused Plaintiff harm in Pennsylvania. Id. at *10–12.

However, the factual record of Abira is readily distinguishable from the present case. In the present case, Plaintiff has no connection with Pennsylvania, and while Defendant PNC is located in Pittsburgh, the trust is administered by a PNC fiduciary officer in Ohio. (See Doc. No. 33, Ex. 14D–G.) The use of the Philadelphia-based account as an intermediary to route tax payments do not rise to the level of contact as in Abira. Furthermore, unlike the Abira Defendant who was sending communications into Pennsylvania, here, the Individual

16

27:5–9, 16–19; 65 at 4.)  Defendant Tormey explained that the tax amounts were transferred from the Trust account to PNC's internal holding account ending in -4718 to facilitate payment of the required taxes, which is supported by Plaintiff's exhibits.  (See Doc. No. 33, Exs. 3, 5A.) The use of the Philadelphia account as a simple intermediary to facilitate payments is tangential at best.  See Martino, 36 F.3d at 294 ("Events or omissions that might only have some tangential connection with the dispute in litigation are not enough [to meet the substantiality requirement of §1391(b)(2)]").

The facts of this case establish that the events or omissions giving rise to Plaintiff's claims occurred primarily, if not entirely, in Ohio.  To name a few: (1) the Trust was created in Ohio; all of the Trust's property, including the sold property at issue, is located in Ohio (see Doc. Nos. 31, Ex. 2; 63-1 at 5:18–19); (2) the trust is administered by Defendant PNC in Ohio (see Doc. No. 33, Ex. 14D–G); and (3) the Trust's outside legal counsel, Defendant Vorys, is located in Ohio.  As such, the connections to the Eastern District of Pennsylvania, let alone Pennsylvania generally, do not meet the requirements under § 1391(b)(2).

**B.  The Case Will Be Transferred to the Southern District of Ohio**

As venue is improper in this district, § 1406(a) requires the Court to either dismiss, or if it's in the interest of justice, transfer the matter to a district in which it could have originally been filed.  Lafferty v. St. Riel, 495 F.3d 72, 77 (3d Cir. 2007).  As explained above, the Trust records and property are in Ohio, the terms of the Trust make clear that Ohio law governs the administration of the Trust, and the trust officer is located in Ohio.  As such, the Court finds it to be in the interest of justice to transfer the case to the Southern District of Ohio so as to not

---

Defendants' were simply copied on emails sent by Defendant Tormey to Plaintiff in Florida. Therefore, Plaintiff's attempt to analogize the factual underpinnings of Abira with the present case is unpersuasive, and this District is not the proper venue for Plaintiff's claims against the Trust Defendants.

17

"needlessly increase the cost of the action, requiring [Plaintiff] to commence a new action in a new forum." Crayola, LLC v. Buckley, 179 F. Supp. 3d 473, 478 (E.D. Pa. 2016); see also Loeb v. Bank of America, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) ("As venue is inappropriate in this district, the court will, in the interests of justice, transfer this action to the District of Maryland, where the action could have been brought originally.").

Were venue proper in this district, the Court would still transfer the case. A trial court has discretion to transfer a case "[f]or the convenience of parties and witnesses" "to any other district or division where it might have been brought" if doing so is in the "interest of justice[.]" 28 U.S.C. § 1404(a). When deciding whether such a transfer is in the interest of justice, the trial court must consider both public and private factors. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879–80 (3d Cir. 1995).

### i. Private Interest Factors

The Third Circuit in Jumara laid out private and public factors for courts to weigh when determining whether transferring a case would be in the interest of justice. See id. The private factors include: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the books and records. Id. at 879.

Of these factors, only the first, Plaintiff's forum preference, weighs against transfer. Although generally given "deference," a plaintiff's preferred forum carries "less weight" when "the cause of action did not occur in the selected forum." Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC, No. 08-cv-4503, 2009 U.S. Dist. LEXIS 3570, at *9 (E.D. Pa. Jan. 13, 2009). And, as explained above, the substantial part of the events or omissions

giving rise to Plaintiff's claims arose in Ohio.  Thus, this factor weighs only slightly in favor of transfer.

The next two factors—Defendants' preferred forum and the location where the cause of action arose—weigh in favor of transfer.  Throughout this litigation, Defendants have maintained that venue is not proper in this District because any events or omissions giving rise to Plaintiff's claims arose in Ohio where the Trust is administered.

The following two factors, involving the convenience of the parties and witnesses, are neutral.  Because Plaintiff and certain Defendants do not live in this District, they will be inconvenienced whether the case remains in this Court or is transferred to the Southern District of Ohio.  Similarly, while the convenience of witnesses is considered "the most powerful factor governing the decision to transfer a case," it appears that many potential witnesses in this case are mostly connected to Ohio. The lawyers are located there and the trust is administered there. Moreover, parties and witnesses can just as readily go to the Southern District of Ohio for a trial as the Eastern District of Pennsylvania.  17 *Moore's Federal Practice* § 111.13[1][f][i–ii].

The last factor weighs in favor of transfer.  Plaintiff's claims relate to the administration of the Trust, which will require review of Trust records related to the alleged breaches of fiduciary duty.  And as explained supra, the Trust records and property are located in Ohio, and the Trust's terms make clear that Ohio law governs the administration of the Trust.  See Arp v. Bell Int'l Labs., Inc., No. 25-cv-2668, 2025 U.S. Dist. LEXIS 216727, at *14 (E.D. Pa. Nov. 4, 2025) (finding that the location of company documents in Minnesota relevant to Plaintiff's claims to weigh in favor of transfer to the District of Minnesota).  Thus, the majority of the private Jumara factors weigh in favor of transfer.  The Court now turns to the public Jumara factors.

19

### ii.  Public Interest Factors

The public factors include: (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Jumara, 55 F.3d 873 at 879–80.

The public factors favor transfer.  The first two factors, the enforceability of the judgment and practical considerations, are neutral because both forums are federal district courts and witnesses would have to travel if this action were litigated in either forum.  See 17 *Moore's Federal Practice* § 111.13[1][h]–[i].

The remaining factors weigh in favor of transfer.  The Southern District of Ohio's docket is less congested than this district's docket. Table C-1, U.S. Dist. Cts., *Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending December 31, 2025*, https://www.uscourts.gov/data-news/data tables/2025/12/31/statistical-tables-federal-judiciary/c-1diciary/c-1 (noting 8,730 cases filed here compared to 2,856 cases filed in the Southern District of Ohio).  Furthermore, the Trust is administered in Ohio and governed by Ohio law; thus, Ohio has an interest in deciding a local controversy.  See 17 *Moore's Federal Practice* § 111.13[1][l].  Lastly, the familiarity with applicable state law factor favors transfer because the parties both contend that Ohio substantive law governs this case.  See id. at [1][m] ("[I]f the choice of law rules of the transferor state dictate that another state's laws apply to the action [], this this will favor transfer to the federal courts of that state.").  Together, the three private Jumara factors and four public Jumara factors, weigh decisively in favor to the Southern District of Ohio.  Therefore, even if venue were proper in this district, the Court would still transfer the case to the Southern District of Ohio.

20

## V.    CONCLUSION

For the foregoing reasons, the Court will transfer the above captioned case to the United States District Court for the Southern District of Ohio.  For this reason, the Court need not decide the Trust Defendants' and Defendant Vorys' Motions to Dismiss the Amended Complaint (Doc. Nos. 42, 46). [8]  An appropriate Order follows.

---

[8]    Plaintiff has also filed an Emergency Motion to Lift the Stay for Limited Discovery and for an Emergency Status Conference (Doc. No. 52), which will be considered by the transferee judge.